425 So.2d 1347 (1983)
James Douglas BRADY
v.
STATE of Mississippi.
No. 53569.
Supreme Court of Mississippi.
January 19, 1983.
Rehearing Denied February 16, 1983.
McGee & Bogen and Edward J. Bogen, Jr., Leland, for appellant.
Bill Allain, Atty. Gen. by Carolyn B. Mills, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before WALKER, BOWLING and DAN M. LEE, JJ.
*1348 DAN M. LEE, Justice, for the Court:
This is an appeal from the Circuit Court of Washington County wherein James Douglas Brady, appellant, was indicted and tried upon a charge of murder for the August 29, 1980, shooting of William Lucas. Brady was convicted of manslaughter and thereafter sentenced to serve a term of eighteen years in the Mississippi Department of Corrections. We affirm.
Appellant and his wife, Cynthia Brady, were living in Greenville. Approximately one week before the shooting, appellant's wife left him with their three-year-old daughter, Tomeka. Mrs. Brady did not inform appellant that she was leaving him or where she was going.
While Mrs. Brady was staying at the home of Cathy Howard, a friend with whom she worked, appellant learned of her whereabouts and called her throughout the week. Appellant asked his wife to return home; however, she refused.
A meeting was arranged between appellant and his wife at the Elks Club in Greenville on the night of August 28, 1980. There, appellant continued to tell his wife of his desire for her to come home to no avail. Appellant had been and continued drinking, also claiming he had taken sleeping pills and smoked dope before the night was over.
When Mrs. Brady returned to the home of Mrs. Howard at approximately 2:45 a.m., appellant followed her there and forced his way into the house. Mrs. Howard was awakened by a discussion between appellant and his wife, whereupon she asked appellant to leave, which he did. Brady returned to Mrs. Howard's home shortly thereafter. He forced his way into the house and immediately began firing shots from a pistol. Inside the house at the time of the shooting were Mrs. Brady, her *1349 daughter, Mrs. Howard, her two children, William Lucas and Herman Sanders, Mrs. Howard's stepfather. Appellant shot and killed both Lucas and Sanders. Mrs. Howard was wounded.
Appellant took his wife and child to Louisiana where he subsequently attempted to commit suicide. He was taken into custody after his wife notified the police in Delhi, Louisiana.
Appellant did not deny that he shot and killed Lucas nor did he contend that Lucas was armed or threatened him in any manner. Appellant rather relied upon the sole defense of insanity at the time the offense was committed.
The jury found appellant guilty of manslaughter. On appeal, he challenges the sufficiency of the evidence to support his conviction and the state's failure to bring him to trial within 270 days of arraignment.
I. Was the verdict of the jury against the overwhelming weight of the evidence?
Appellant contends that the overwhelming proof offered at trial through the testimony of his wife, two clinical psychologists and a psychiatrist indicates that at the time of the commission of the offense appellant was psychotic and did not know the difference between right and wrong. A psychiatrist testified for the state that appellant did know right from wrong at the time of the commission of the offense.
We find appellant's argument unpersuasive. The evidence surrounding his mental condition at the time the offense was committed was conflicting. It is well settled that the issue of sanity or insanity is for determination by the jury. Cole v. State, 405 So.2d 910 (Miss. 1981).
Juries and trial judges are not bound to accept the testimony of expert witnesses but may accept or reject parts of that testimony. Matthews v. State, 394 So.2d 304 (Miss. 1981). See also Lias v. State, 362 So.2d 198 (Miss. 1978); Pounders v. State, 335 So.2d 904 (Miss. 1976); and Herron v. State, 287 So.2d 759 (Miss. 1974). In Sadler v. State, 407 So.2d 95 (Miss. 1981), we stated:
Among the alleged errors assigned is that the trial court should have sustained Sadler's motion for a new trial on the ground that the jury verdict was not supported by sufficient credible evidence.
Considering the evidence, as we must, in the light most favorable to the state and accepting as true the evidence supporting or tending to support the verdict, with all inferences supportive of the verdict that reasonably may be drawn therefrom, we find no merit in this contention. Glass v. State, 278 So.2d 384 (Miss. 1973). In Spikes v. State, 302 So.2d 250 (Miss. 1974), this Court said:
On appeal, in this situation, in passing upon the sufficiency of evidence to support a verdict, this Court must accept as true the evidence which supports the verdict. Murphree v. State, 228 So.2d 599 (Miss. 1969). [302 So.2d at 251].
The resolution of such conflicts as there were in the evidence in this case, was peculiarly for the jury. In Hankins v. State, 288 So.2d 866 (Miss. 1974), it was said:
In Evans v. State, 159 Miss. 561, 132 So. 563 (1931), we stated:
We invite the attention of the bar to the fact that we do not reverse criminal cases where there is a straight issue of fact, or a conflict in the facts; juries are impaneled for the very purpose of passing upon such questions of disputed fact, and we do not intend to invade the province and prerogative of the jury. (159 Miss. at 566, 132 So. at 564) (407 So.2d at 97)
There is no merit in appellant's contention that the verdict of the jury was against the overwhelming weight of the evidence.
II. Did the trial court err in overruling appellant's motion for dismissal pursuant to Mississippi Code Annotated section 99-17-1 (Supp. 1982)?
Mississippi Code Annotated section 99-17-1 (Supp. 1982) provides:
Unless good cause be shown, and a continuance duly granted by the court, all offenses for which indictments are *1350 presented to the court shall be tried no later than two hundred seventy (270) days after the accused has been arraigned.
Appellant contends that the trial court erred in overruling his motion for dismissal because the state failed to bring him to trial within 270 days of his arraignment. The record discloses that 272 days elapsed between appellant's arraignment and trial. Therefore, this Court is faced with the question of whether good cause was shown for the two-day delay in bringing appellant to trial. The sequence of events with regard to this claim is as follows:
(1) On September 24, 1980, prior to his arraignment, appellant filed a motion for mental examination. On that same day an order was entered directing that he be examined by a competent psychiatrist and/or psychologist. The order further provided that a copy of the diagnosis insofar as the competency of appellant was concerned should be delivered to the court and attorney for the appellant with an opinion as to whether appellant could assist his attorney, whether he understood the charges against him and whether he was insane at the time of the alleged commission of the offense.
(2) On November 24, 1980, appellant was arraigned, at which time he entered a plea of not guilty.
(3) On May 14, 1981, the state filed its motion for psychiatric examination of appellant pursuant to Rule 4.08 of the Uniform Criminal Rules of Circuit Court Practice. In support of its motion, the state offered to show that it had been notified that appellant intended to rely upon a defense of insanity at the time of the alleged crime. Pursuant to said motion, an order was entered to transport appellant to the Mississippi State Hospital at Whitfield for examination and evaluation as to appellant's mental ability to commit the criminal act with which he was charged, whether any insanity still existed and whether appellant was mentally competent to stand trial and rationally able to assist his attorney in his defense.
The order further provided that if it was determined that appellant was suffering from a mental disease or condition from which past or present insanity resulted, or was incompetent to stand trial, he was ordered committed to the Mississippi State Hospital at Whitfield for the purpose of treatment and further evaluation until such time as the court was notified that appellant was cured of his insanity, restored to reason and competent to stand trial. The cause was ordered continued for good cause shown until the examination ordered was completed and the court notified.
(4) On June 5, 1981, a letter dated June 2, 1981, from Dr. Robert S. McKinley, staff psychiatrist at the Mississippi State Hospital at Whitfield, was filed in the cause. The substance of the letter revealed the findings of the staff at Whitfield that appellant was without psychosis, responsible for his actions at the time of the alleged crime and competent to stand trial.
(5) On the second Monday in July, the July court term began which ran for twenty-four days thereafter.
(6) On August 10, 1981, appellant filed a motion for production of documentary and physical evidence for inspection and copying and a motion for special venire.
(7) On August 20, 1981, appellant filed a motion for subpoena duces tecum as well as his motion to dismiss for failure of the state to comply with section 99-17-1.
(8) On August 24, 1981, appellant's motion to dismiss was overruled. The trial judge assigned no reason for the denial of said motion.
(9) The cause proceeded to trial on August 24 and concluded on August 25, 1981, with appellant being found guilty of manslaughter.[1]
A review of the foregoing events reveals that the trial court's order dated September 24, 1980, was never complied with by the appellant in that a copy of his diagnosis after psychiatric examination was never delivered to the court.
*1351 On May 14, 1981, the state filed its motion for psychiatric examination after being notified by appellant that he intended to rely on the defense of insanity at the time of the alleged commission of the offense. An examination was ordered and the cause continued for good cause shown until said examination was completed and the court notified. On June 5, 1981, a letter from the state mental hospital at Whitfield was filed with the court which rendered an opinion that appellant was sane at the time of the alleged commission of the act and competent to stand trial.
In State v. Davis, 382 So.2d 1095 (Miss. 1980), this Court, in construing our 270-day rule, held:
The order entered by the court on August 29, 1978, must be considered, in the absence of any objection or protest thereto, because of the "overcrowded condition of the court docket" to have been for "good cause." The filing by the defendants of the demurrer and motions to quash on the eve of trial on this date, 81 days after arraignment, would have displaced the cases on the overcrowded trial docket of the court and made a new setting at the term difficult, if not impossible. This becomes evident when it is borne in mind that the motion to quash the indictment because of alleged racial discrimination in the selection of the foreman presented a factual issue, requiring an evidentiary hearing and was filed without notice on the day set for trial. The delay resulting from this continuance cannot be considered as having been without good cause, especially in the absence of any showing in the record to the contrary. In the complete absence of any protest or objection, or any request by defendants for trial, the continuances of June 23, 1978, August 29, 1978 and February 7, 1979 were entered for "good cause." Even if it is assumed that other delays were not justified, nevertheless, there must be deducted from the 340 days: (1) 45 days attributable to the continuance granted on defendant's own motion, (2) the 34 days delay following the filing of the several motions by defendants on the eve of trial on August 29 and due to the overcrowded condition of the docket, and (3) 62 days attributable to the continuance granted because of the absence of the State's witness, the toxicologist.

In Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the United States Supreme Court set out what is sometimes referred to as a "balancing test," to be used in determining whether a defendant in a criminal case had been denied his constitutional right to a speedy trial. In that case the Court said that in making such a determination that the factors to be considered were: length of the delay, reason for the delay, the defendant's assertion of his right, and prejudice resulting to the defendant.
These criteria were used by this Court in Harrington v. State, 336 So.2d 721, 723-724 (1976):
In Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) the United States Supreme Court announced a balancing test which takes into consideration the conduct of both the prosecution and the defendant in determining whether or not the accused's right to a speedy trial has been violated. The test is expressed as follows:
A balancing test necessarily compels courts to approach speedy trial cases on an ad-hoc basis. We can do little more than identify some of the factors which courts should assess in determining whether a particular defendant has been deprived of his right. Though some might express them in different ways, we identify four such factors: Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant. 407 U.S. 514 at 530, 92 S.Ct. 2182 at 2192, 33 L.Ed.2d 101 at 116-17 (Emphasis added).

In the present case clear justification for 141 days of the delay following arraignment appears from a consideration of the record. At no time on any of the occasions when the trial court entered orders for continuances were there any *1352 requests by the defendants for trial or assertion of their right to a speedy trial or objection or protest at the delay. Moreover, no prejudice is shown to have resulted to the defendants from the delays. (382 So.2d at 1097-98) (emphasis ours).
In State v. Sistrunk, 404 So.2d 564 (Miss. 1981), we also found there was good cause shown for the state's failure to bring two defendants to trial within 270 days of their arraignment:
The record discloses that delay in three distinct instances was due to granting a continuance in the prosecution of the case.
On August 17, 1979, the trial court granted a continuance at the request of the State, since two material witnesses of the State would be absent from the jurisdiction until the latter part of September. The continuance extended over a 27 day period, and no protest or objection was made to it by the defendants and there was no request by them for trial.

On December 13, 1979, the circuit judge entered an order of continuance, with the agreement of both parties involved, that trial was to be reset in January at the request of either party. This continuance extended over a period of at least nineteen days.
The court also made a general order, to carry over all cases from the January term to the February term, which was three days later.

These continuances are similar to continuances which State v. Davis, supra, held must be deducted from the amount of time elapsing after arraignment, in determination of whether there has been a violation of Mississippi Code Annotated section 99-17-1 (Supp. 1981). The Court in Davis, supra, noted that a delay resulting from a continuance cannot be considered as having been without good cause, if there has been a complete absence of any protest or objection, or any request by the defendants for trial.

Since Sistrunk and Hammons in no way protested or objected to the continuances of August 17, 1979 and December 13, 1979, or ever requested trial, it is clear under Davis, supra, that the motion to dismiss by the defendants pursuant to Mississippi Code Annotated section 99-17-1 (Supp. 1981), was premature. This is especially true, since it is undisputed, that trial was set on March 18, 1980, and that such a trial would have been a timely one under Mississippi Code Annotated section 99-17-1 (Supp. 1981). It would be timely, because March 18, 1980 was 316 days after waiver of arraignment, and after considering the delay caused by the continuance of August 17, 1979, and December 13, 1979, which, as mentioned above, were duly ordered by the trial court without objection or request for trial by defendant, the trial was actually set 270 days after waiver of arraignment. (404 So.2d at 564-65)
In the case at bar, the cause was continued for good cause shown from May 14, 1981, until June 5, 1981, a period of 23 days. The court's September 24, 1980, order was not complied with until the notice of the plea of insanity was first raised on May 14, 1981. The late filing of appellant's notice of insanity defense necessitated a continuance until the state could obtain a mental examination to determine whether it agreed with the insanity plea or could produce expert testimony to the contrary. This is no different than granting the state a 27-day continuance because prosecution witnesses were outside the jurisdiction. Sistrunk, supra. Appellant made no objection to the delay nor did he ever request a trial date. A review of the record leads us to the conclusion that appellant acquiesced in this delay. When these 23 days are deducted from the period from appellant's arraignment to his trial, appellant was tried well within 270 days of his arraignment.
Turner v. State, 383 So.2d 489 (Miss. 1980), is distinguishable from the present case in that in Turner the state failed to obtain any continuances but simply allowed 270 days to elapse after the date of arraignment without bringing Turner to trial. The delay resulting from this non-action on the *1353 part of the state prejudiced Turner in that a material witness in his behalf had become unavailable. In Turner, this Court also noted that the state had wholly failed to respond to the question presented and that this was tantamount to a confession of error.
Based on the foregoing, appellant's conviction and sentence are hereby affirmed.
AFFIRMED.
PATTERSON, C.J., WALKER and BROOM, P.JJ., and ROY NOBLE LEE, BOWLING, HAWKINS and PRATHER, JJ., concur.
ROBERTSON, J., took no part.
NOTES
[1] The July term was extended on August 24 and 25, 1981, for appellant's trial.