344 So.2d 731 (1977)
Christopher Alvin MOORE
v.
STATE of Mississippi.
No. 49561.
Supreme Court of Mississippi.
March 23, 1977.
Rehearing Denied April 27, 1977.
*732 Kennie E. Middleton, Hattiesburg, for appellant.
A.F. Summer, Atty. Gen., by John C. Ellis, Special Asst. Atty. Gen. and Karen A. Gilfoy, Asst. Atty. Gen., Jackson, for appellee.
Before GILLESPIE, C.J., and SMITH and WALKER, JJ.
GILLESPIE, Chief Justice, for the Court.
Charged with capital murder, Christopher Alvin Moore was convicted and sentenced to suffer the death penalty. He was indicted in Jackson County and the trial was moved to Hancock County upon defendant's motion for a change of venue.
Mrs. Irene Hoffman was murdered in her home in Pascagoula, Mississippi. She was employed as a teacher at the Arlington Elementary School which is located across the street from her residence. On the day she was murdered, Mrs. Hoffman had a break in her teaching schedule between the hours of 9:45 and 10:45 A.M. During this break she went home as was her custom. She was murdered sometime between the hours of 10 and 11 A.M., while she was at home during the school recess. Her body was found at approximately 11:10 A.M. by two of her fellow teachers who came to her residence to inquire about her failure to resume her teaching duties at 10:45 A.M. After failing to get a response by knocking on the door, the two teachers entered the home by climbing through a window. They found Mrs. Hoffman's body lying on the floor with her hands bound behind her and a gag in her mouth. The victim's clothes, *733 floor and walls were spattered with blood in more than one room and an overturned stool in another room gave indication that the victim and her attacker had struggled over a considerable area of the house. Mrs. Hoffman was fully dressed and had been stabbed a total of eleven times and there were lacerations on the head and scalp. The only manner in which the attacker could have entered was through a window. The screen was open. Several latent fingerprints were lifted from the screen at this window.

I.

Was defendant entitled to peremptory instruction?
The proof linking defendant with the crime consists of: (1) at some time near the hour of the murder a black male riding a dark ten-speed bicycle was seen stopped at a point near Mrs. Hoffman's house looking over the fence into her yard (defendant is a 22-year-old black male); (2) a latent fingerprint lifted from the frame of the window screen where the intruder entered the Hoffman residence matched identically with defendant's fingerprint; (3) two Negroid hairs were found on Mrs. Hoffman's pubic area that had the same characteristics as hairs from defendant's body, and the expert testified that although he could not testify that the hairs from the two sources came from the same person, it was a rare case when he could not find different characteristics in hairs from two different people, and (4) defendant lived in the immediate neighborhood of the Hoffman residence.
In our opinion the fingerprint is conclusive evidence that defendant was at the window where the murderer entered the house. The hair evidence is very convincing that defendant's hair was on Mrs. Hoffman's pubic area. The other evidence is consistent with defendant's guilt. His alibi evidence is weak and could readily be rejected by the jury. Defendant did not testify.
We are satisfied that the jury was justified in finding defendant guilty beyond a reasonable doubt and to the exclusion of every reasonable hypothesis other than that of defendant's guilt. He was not entitled to the peremptory charge, nor was the verdict contrary to the overwhelming weight of the evidence.

II.

Was the fingerprint evidence admissible?
Appellant argues that his fingerprints were obtained as a result of his illegal detention and should have been excluded from the evidence. He contends that the principles laid down in Davis v. Mississippi, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969), require the suppression of this evidence. After discovery of Mrs. Hoffman's body the police launched an intensive investigation in an effort to determine the identity of the perpetrator of the crime. About twenty-six people were questioned and fingerprinted. The circumstances under which defendant was fingerprinted are as follows. The officers received information during their investigation that a black male had been seen riding a dark ten-speed bicycle in the area of the victim's home on the morning of the murder and that this person stopped and looked over the fence surrounding Mrs. Hoffman's house. Several days after the murder, Detective Brooks, who was investigating the murder, saw defendant riding a blue ten-speed bicycle near his home. The officer stopped and questioned the defendant about the crime and the defendant's whereabouts on the date the crime was committed. Defendant was not detained. He told the officers that he had gone to the State Employment Office on the morning of the murder and that he did not go near the Hoffman house. Defendant lived about 100 yards from Mrs. Hoffman's house. He occupied an apartment or a room with Jessie Mitchell, Jr. Three or four days after the date of the murder, Jessie Mitchell, Jr. was taken by the police officers to the police station and interrogated regarding the murder. The same officer who interrogated Mitchell had previously encountered appellant on his bicycle. After Mitchell was fingerprinted *734 and as he departed from the police station, Detective Brooks requested Mitchell to contact appellant and tell him to come in as the police officers wanted to see him. Later that same day, appellant appeared at the Pascagoula Police Station where he was recognized by Detective Brooks, who took him without asking any questions to the office of the fingerprint officer of the department. Mr. Thompson, the fingerprint officer, did not question appellant and in a routine manner fingerprinted the defendant and then the defendant went on his way. About eleven days later, it was learned that one of defendant's fingerprints matched the latent print found on the window screen where entrance was made to Mrs. Hoffman's residence. The defendant was arrested and charged with the crime.
The totality of the circumstances clearly shows that defendant was not under arrest and voluntarily went to the police department for the purpose of being fingerprinted. This is an entirely different set of facts from those involved in Davis. Davis was a fourteen-year old youth who was first brought into the Meridian Police Department on December 3, 1965, and released after being fingerprinted and routinely questioned. Between that date and December 7, Davis was interrogated by police on several different occasions at various places and at police headquarters. On December 12, Davis was arrested and taken 90 miles away for an overnight stay in jail in Jackson at a time when the police had neither a warrant nor probable cause for his arrest, and during this time he took a lie detector test. He was returned to the Meridian jail, and on December 14, while he was still confined under arrest, he was fingerprinted a second time. The facts in the present case are not similar to those involved in Davis, and the recent case of Oregon v. Mathiason, ___ U.S. ___, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977), is authority for the proposition that the defendant in the present case was not under arrest after having voluntarily gone to the police station. In Mathiason the Court stated:
In the present case, however, there is no indication that the questioning took place in a context where respondent's freedom to depart was restricted in any way. He came voluntarily to the police station, where he was immediately informed that he was not under arrest. At the close of a one half-hour interview respondent did in fact leave the police station without hindrance. It is clear from these facts that Mathiason was not in custody "or otherwise deprived of his freedom of action in any significant way."
Such a noncustodial situation is not converted to one in which Miranda applies simply because a reviewing court concludes that, even in the absence of any formal arrest or restraint on freedom of movement, the questioning took place in a "coercive environment." Any interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime. But police officers are not required to administer Miranda warnings to everyone whom they question. Nor is the requirement of warnings to be imposed simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect. Miranda warnings are required only where there has been such a restriction on a person's freedom as to render him "in custody." It was that sort of coercive environment to which Miranda by its terms was made applicable, and to which it is limited. ___ U.S. at ___, 97 S.Ct. at 714, 50 L.Ed.2d at 719.
We hold that defendant's fingerprints were voluntarily given. Cf. Luton v. State, 287 So.2d 269 (Miss. 1973); and Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).

III.
Assignments of error three and four raise the question of the sufficiency of the evidence to prove the crime of capital murder.
Were the elements of capital murder proven?
*735 Defendant contends that the state failed to prove that Mrs. Hoffman was raped and therefore failed to prove an essential element of capital murder. The indictment charged capital murder under Mississippi Code Annotated section 97-3-19 (1976), which provides in part as follows:
(2) The killing of a human being without the authority of law by any means or in any manner shall be capital murder in the following cases:
* * * * * *
(e) When done with or without any design to effect death, by any person engaged in the commission of the crime of rape, burglary, kidnapping, arson or robbery, or in any attempt to commit such felonies.
It is argued that the state failed to prove rape in that it failed to prove actual penetration of Mrs. Hoffman's private parts. (It is not necessary to discuss whether there is merit in defendant's contention that actual rape was not proven, because to prove the crime of burglary only the intent to rape need be proven.) This argument requires: (1) analysis of the quoted statute, (2) a statement of the elements of the crime charged in the indictment, and (3) determination whether the evidence proved these elements beyond a reasonable doubt and to the exclusion of every reasonable hypothesis other than that of guilt.
The elements of the crime of capital murder are: (1) the killing of a human being without authority of law; and (2) when done by any person engaged in the commission of the crime of burglary, etc.
Our immediate inquiry is whether burglary was proven, inasmuch as burglary is an element of the crime charged. Burglary is denounced as a crime by Mississippi Code Annotated section 97-17-19 (1972), as follows:
Every person who shall be convicted of breaking and entering any dwelling house, in the day or night, with intent to commit a crime, shall be guilty of burglary, and be imprisoned in the penitentiary not more than ten years.
The crime of burglary of a dwelling has two elements: (1) the burglarious breaking and entering a dwelling, and (2) the felonious intent to commit some crime therein. Thames v. State, 221 Miss. 573, 73 So.2d 134 (1954).
An indictment for burglary must state the particular crime the intruder intended to commit. The indictment of defendant did so in this case, charging that he intended to commit the crime of rape. Defendant's argument that it was necessary to prove that defendant actually raped Mrs. Hoffman is without merit. Only the intent need be proven to establish the second element of the crime of burglary. In Thames v. State, supra, this Court said:
Appellant also contends that the proof was not sufficient to prove that the appellant intended to commit rape. Intent, being a state of mind, is rarely susceptible of direct proof, but ordinarily must be inferred from the acts and conduct of the party and the facts and circumstances attending them which reasonably indicate them to the minds of others. 9 Am.Jur. 271. In the case of Nichols v. State, 207 Miss. 291, 42 So.2d 201, 202, this Court quoted approvingly from State v. Worthen, 111 Iowa 267, 82 N.W. 910, as follows: "`Some presumptions are to be indulged in against one who enters a building unbidden at a late hour of night, else the burglar caught without booty might escape the penalties of the law. People are not accustomed in the nighttime to enter homes of others, when asleep, with innocent purposes.'"
* * * * * *
The criminal intent is clear. The specific intent to ravish is consistent with the proven facts and is reasonably inferable. Compare McFarland v. State, 212 Miss. 802, 55 So.2d 457.
221 Miss. at 577-578, 73 So.2d at 136.
The fact that the proof indicates robbery was not the intended crime, together with the finding of Negroid hairs on Mrs. Hoffman's pubic area, the violence the burglar inflicted on Mrs. Hoffman, and the *736 finding of sperm in her vagina allowed the inference that the intruder intended to commit the crime of rape. Where the evidence establishes that the breaking and entering was for some unlawful purpose and the specific intent is consistent with the proven facts and is reasonably inferable, the proof is sufficient to establish the second element of the crime of burglary. Fondren v. State, 253 Miss. 241, 175 So.2d 628 (1965).

IV.
We agree with defendant's contention that the case should be reversed under the authority of Jackson v. State, 337 So.2d 1242 (Miss. 1976).
The case is reversed and remanded for a new trial not inconsistent with the decision in Jackson v. State, supra.
REVERSED AND REMANDED.
PATTERSON and INZER, P. JJ., and SMITH, ROBERTSON, SUGG, WALKER, BROOM and LEE, JJ., concur.