703 So.2d 250 (1997)
STATE of Mississippi
v.
Anthony Mark BERRYHILL a/k/a "MOP".
No. 95-KA-00289-SCT.
Supreme Court of Mississippi.
October 23, 1997.
Michael C. Moore, Attorney General, Marvin L. White, Jr., Asst. Atty. Gen., Leslie S. Lee, Special Asst. Atty. Gen., Jackson, for appellant.
Terry Lynn Wood, Corinth, for appellee.
Before PRATHER, P.J., and BANKS and SMITH, JJ.
BANKS, Justice, for the Court:
¶ 1. In this case we consider for the first time whether a capital murder indictment which is predicated upon the underlying crime of burglary must specifically state the intended felony which comprises the charged burglary. We conclude that such capital murder indictments must contain an allegation of the specific criminal intent that constitutes *252 an element of the burglary. Accordingly, we affirm the trial court's judgment below to that effect.

I.
¶ 2. On March 1, 1994, Anthony Mark Berryhill was indicted for capital murder while engaged in the commission of a burglary, attempted kidnaping of a child, possession of a firearm by a convicted felon, and as an habitual offender. Berryhill had murdered his girlfriend in the home of their child's babysitter on January 21, 1994. The trial court eventually severed the kidnaping and firearm charges pursuant to a pretrial motion.
¶ 3. On May 31, 1994, well prior to trial, Berryhill moved through counsel to quash the indictment, or alternatively demur on the ground that it did not charge which underlying offense comprised the charged burglary.[1] Before the trial court ruled on that motion, Berryhill filed a Motion to Specify Underlying Offense on September 23, 1994. At the direction of the court, the State responded by letter dated October 14, 1994, advising Berryhill that the felony underlying the burglary count in the indictment was intent to commit an assault.
¶ 4. On February 8, 1995, the State sent Berryhill a second letter in which it advised him that it may attempt to prove the burglary on the basis of an underlying kidnaping or attempt to commit kidnaping in addition to the intent to commit an assault. This letter was dated five days prior to the beginning of Berryhill's trial. The day before the trial, the court inquired of the State its intentions on the burglary charge, and was told after "some conversation in chambers ... that the State would proceed with the intended crime of assault."
¶ 5. Berryhill's jury was selected and sworn in on February 13. The trial court then took up more motions. Berryhill renewed his Motion to Quash and/or Demur to the indictment because it failed to state the offense that underlay the burglary count. Berryhill explained to the court that he had first received information from the State that he would have to defend against a charge of burglary with the intent to commit an assault, and then was later informed that he might have to defend against burglary with intent to commit kidnaping or attempted kidnaping. He complained that he had not been given accurate or adequate notice by the indictment, and also that the State was trying to avoid the constitutional requirement that a grand jury present a person with criminal charges.[2] The State argued that Berryhill's motion was untimely, and that capital murder/burglary indictments were not required to state the offense which comprised the burglary charge.
¶ 6. The trial court granted Berryhill's motion from the bench that afternoon, February 14. Finding the indictment insufficient in regard to the burglary charge since the charge did not state the underlying crime, the court quashed the capital portion of the indictment. The State was invited to proceed on simple murder. Both parties then approached the bench with a plea bargain. Berryhill immediately thereafter pled guilty to simple murder, and was sentenced to life without parole as an habitual offender. The State lodged no objection to the guilty plea, although it did assert that it was "aggrieved" by the court's ruling to quash the capital aspect of Berryhill's indictment.
¶ 7. The State presently appeals the trial court's ruling under the authority of Miss. Code Ann. § 99-35-103 (1994). It argues that the ruling was erroneous inasmuch as Berryhill's motion was filed after the issuance of the venire facias, and was further erroneous since capital murder indictments predicated on burglary need not state the felony underlying the burglary aspect. The State's brief does not contain a prayer for relief, so we have assumed that it is seeking a pronouncement from this Court on the *253 requirements of capital murder indictments where the underlying crime is burglary and the power of the trial court to grant a motion to quash after a jury has been impaneled.

II.

A.
¶ 8. As a preliminary matter, Berryhill contends that the State has no authority to prosecute this appeal. Miss. Code Ann. § 99-35-103, the vehicle for criminal appeals taken by the State, provides in relevant part as follows:
The state or any municipal corporation may prosecute an appeal from a judgment of the circuit court in a criminal cause in the following cases:
(a) From a judgment sustaining a demurrer to, or a motion to quash an indictment, or an affidavit charging crime; but such appeals shall not bar or preclude another prosecution of the defendant for the same offense.
¶ 9. Berryhill contends that since the trial court in this case did not quash the entire indictment but merely the capital portion, the State has no authority under this provision to appeal. He asserts that the court's ruling did not represent a final judgment against the defendant, but merely granted him partial relief from the capital portion of the indictment. Not having filed any reply brief, the State made no response to this argument.
¶ 10. We hold that Miss. Code Ann. § 99-35-103 includes instances such as these, where the trial court has quashed a portion of the indictment. The trial court's quashal was in fact the final judgment on the capital murder charge, in that the "judicial labor [wa]s at an end" with regard to that charge. State v. Burrill, 312 So.2d 1, 3 (Miss. 1975) (quoting Slatcoff v. Dezen, 72 So.2d 800, 801 (Fla. 1954)).
¶ 11. That said, we proceed to the merits of the State's appeal.

B.

1. Timeliness
¶ 12. The State first appeals the trial court's decision to grant Berryhill's Motion to Quash on the ground that it was untimely filed, and thus erroneously granted. It cites Miss. Code Ann. § 99-7-21 (1994):
All objections to an indictment for a defect appearing on the face thereof, shall be taken by demurrer to the indictment, and not otherwise, before the issuance of the venire facias in capital cases, and before the jury shall be impaneled in all other cases. The court for any formal defect, may, if it be thought necessary, cause the indictment to be forthwith amended, and thereupon the trial shall proceed as if such defect had not appeared.
The State also cites § 99-7-23 (1994):
All objections to an indictment for any defect dehors the face thereof, presenting an issue to be tried by the court, shall be taken by motion to quash the indictment, and not otherwise, within the time allowed for demurrer, and with the right to amend, as provided in the last preceding section.
¶ 13. On the basis of these authorities, the State contends that since Berryhill raised his Motion to Quash after the impanelment of the jury, his motion was untimely and should have been denied as such.
¶ 14. Berryhill responds that his motion was timely because his Motion to Quash was first filed five months before the issuance of venire facias. He further argues that an objection to the sufficiency of an indictment can be raised at any time.
¶ 15. The record is plain that the Motion to Quash was filed well before the issuance of the venire facias, which occurred on or about January 24, 1995. Having been assured by letter that the burglary count was predicated on an underlying assault, Berryhill did not press the court to rule on that motion. It was only after the State suggested that it might try to prove other underlying felonies, none of which appeared in the capital murder indictment, that Berryhill renewed his Motion to Quash. We therefore *254 find that the motion was timely within the constraints of § 99-7-21.[3]
¶ 16. Furthermore, this Court has squarely held that challenges to the substantive sufficiency of an indictment are not waivable. Thus, they may be first raised at anytime, including on appeal. See Copeland v. State, 423 So.2d 1333 (Miss. 1982) (substantive failure of an indictment to charge a crime was not waivable and not subject to amendment). See also Burchfield v. State, 277 So.2d 623 (Miss. 1973); Monk v. State, 532 So.2d 592 (Miss. 1988), superseded by rule on other grounds (objection to an indictment that failed to charge an essential element of the crime sought to be charged may be raised for the first time on appeal). In light of that alternative authority, we easily conclude that Berryhill's motion, alleging as it did a substantive defect of his indictment to state the essential elements of the crimes charged, was not untimely presented, and the trial court was not in error in addressing the motion.

2. Merits of Ruling
¶ 17. The State next argues that the trial court's ruling was erroneous because capital murder indictments that are predicated on burglary are not further required to state the felony that comprises the burglary. It contends that since the language of the capital murder statute only requires that a murder be committed in the course of one of the enumerated felonies, in this case burglary, a capital murder indictment that tracks that language is sufficient. Berryhill responds that such an indictment must be required to state the underlying felony in order to adequately advise a defendant what he must defend against, and to ensure that any charges lodged against a defendant at trial have been presented by a grand jury.
¶ 18. The trial court, in its discussion from the bench, ruled that the burglary portion (and consequently the capital portion of the murder) was insufficiently alleged in the indictment. In assessing the value of the State's various letters about what it would be proceeding with in its burglary proof, the court stated that "[i]f it were as simple as allowing the District Attorney or the office of the District Attorney to advise of the crime then there would be no need for grand juries." The court stated that it was "of the opinion that the underlying felony of burglary which does not specify the specific crime with which the defendant broke and entered the premises and intended to commit, which could be probably one hundred different crimes and/or misdemeanors and still constitute the charge, does not adequately inform the Defendant of the nature of that particular charge and therefore that portion of the indictment is not sufficient."
¶ 19. While this Court has considered the question in dicta, it has yet to squarely hold (in the sense of stating a rule that is germane to a case's disposition) that a capital murder indictment that arises out of a burglary must state the crime that comprises the burglary. In Lambert v. State, 462 So.2d 308 (Miss. 1984), Lambert raised the question of the sufficiency of his capital murder indictment when it failed to specify which crime comprised the burglary portion of his capital murder count. The opinion reflected a 4-4 decision, leaving the conviction and sentence standing. The Court opinion, comprising Justices Prather, Walker, Roy Noble Lee, and Bowling, expressly declined to enunciate a rule on whether capital murder/burglary indictments needed to state the underlying offense to the burglary, since Lambert was only convicted of simple murder and there was no need for the Court to assess the sufficiency of his capital murder indictment. That opinion nevertheless noted this Court's long-standing holdings that burglary indictments were required to state the underlying offense lest they be fatally defective. Lambert, 462 So.2d at 311 (citing Newburn v. State, 205 So.2d 260 (Miss. 1967)); State v. Buchanan, 75 Miss. 349, 22 So. 875 (1898). It concluded on that issue that it would express no opinion on whether Lambert's indictment *255 would be fatally defective had he been convicted of capital murder. Lambert, 462 So.2d at 311.
¶ 20. All four dissenting Justices stated that they would hold that capital murder indictments that arise out of a murder in the course of a burglary would need to state the constituent crime of the burglary. Then-Justice Dan Lee, in an opinion joined by Justices Hawkins, Sullivan, and Robertson (in relevant part) stated that since the indictment provides the basis of the notice to the defendant of the crime for which he is to be tried, the failure to be informed of the nature of the crime underlying the burglary was tantamount to the failure to allow a defendant to prepare a defense. Lambert, 462 So.2d at 319 (Dan Lee, J., dissenting). He noted that the record in that case revealed that neither the defense nor the court was aware that the State was going to be relying on sexual battery as an underlying offense in that case.
¶ 21. Justice Robertson added his own analysis to Justice Lee's. Noting that this Court has held that a burglary indictment will pass muster as long as a fair reading of it taken as a whole will give clear notice of the nature and cause of the charge, Justice Robertson concluded that the burglary portion of Lambert's indictment would not have survived any scrutiny were it not tied to a capital murder charge.[4] While he agreed with the affirming opinion inasmuch as Lambert was only convicted of a simple murder charge that was sufficiently alleged in the indictment, he found the capital murder portion of Lambert's indictment to be defective. Noting that since capital murder, as defined by statute, contemplates the interrelated commission of two separate felonies, a valid capital murder indictment would have to "charge both felonies with sufficient specificity to withstand a motion to dismiss had either been charged alone." Id. at 322-23 (Robertson, J., dissenting in part) (citing Moore v. State, 344 So.2d 731, 735 (Miss. 1977)).
¶ 22. In Moore v. State, 344 So.2d 731 (Miss. 1977), we considered the State's proof against Moore, who was charged with capital murder in the course of burglary. In that case, Moore's indictment charged that he had committed burglary with the intent to rape, and he argued that the State was required to prove that the victim actually was raped. In holding that the burglary portion of Moore's capital murder indictment required only proof that he had intended to rape the victim, this Court stated:
The elements of the crime of capital murder are: (1) the killing of a human being without authority of law; and (2) when done by any person engaged in the commission of the crime of burglary, etc.
Our immediate inquiry is whether burglary was proven, inasmuch as burglary is an element of the crime charged... .
The crime of burglary of a dwelling has two elements: (1) the burglarious breaking and entering a dwelling, and (2) the felonious intent to commit some crime therein. Thames v. State, 221 Miss. 573, 73 So.2d 134 (1954).

An indictment for burglary must state the particular crime the intruder intended to commit. The indictment of defendant did so in this case, charging that he intended to commit the crime of rape ... . (sic)
Moore v. State, 344 So.2d 731, 735 (Miss. 1977) (emphasis added).
¶ 23. Under the authority of Moore, and the analyses in Lambert, we hold that capital murder indictments that are predicated on burglary are required to state the underlying offense to the burglary. The reasons that we find this to be the better rule are twofold, and both arise out of the purposes of the indictment generally. First, as Justice Lee noted in Lambert, an indictment that fails to give notice to a defendant of the charges to which he has been hailed into court to defend will fail to provide him an opportunity to prepare a defense. We have repeatedly held that an indictment must give notice of the nature and cause of the charges, *256 although a reasonably concise statement of the crime will suffice. Williams v. State, 445 So.2d 798, 804 (Miss. 1984) (concise statement of crime will serve purpose of indictment to provide description of charge which will enable accused to prepare defense); Bullock v. State, 391 So.2d 601, 606 (Miss. 1980) (indictment gives accused fair notice of crime charged). In the context of capital murder, this Court has further held that a bare allegation of robbery in an indictment, without further specification of the facts in support of that, is sufficient. Mackbee v. State, 575 So.2d 16, 35 (Miss. 1990).
¶ 24. Simply put, the level of notice that would reasonably enable a defendant to defend himself against a capital murder charge that is predicated upon burglary must, to be fair, include notice of the crime comprising the burglary. Burglary is unlike robbery and all the other capital murder predicate felonies in that it requires as an essential element the intent to commit another crime. While it is true that the general rule finds indictments that track the language of the criminal statute to be sufficient, Ward v. State, 479 So.2d 713, 715 (Miss. 1985) (charging aggravated assault), the fairer rule in case of capital murder arising out of burglary is that which we intimated in Moore, and would require the indictment to name the crime underlying the burglary in addition to tracking the capital murder statute. See e.g., United States v. Simmons, 96 U.S. 360, 361, 24 L.Ed. 819 (1877) (an indictment not framed to apprise the defendant with reasonable certainty of the nature of the accusation against him is defective although it may follow the language of the statute); United State v. Cruikshank, 92 U.S. 542, 558, 23 L.Ed. 588 (1875) ("[I]t is not sufficient that the indictment shall charge the offence in the same generic terms as in the definition; but it must state the species,  it must descend to particulars").
¶ 25. As the facts in this case demonstrate, a defendant such as Berryhill who has been indicted without specifying the burglary may find out on the eve of trial that the State might try to prove the burglary on different theories. Needless to say, different theories would plainly invite different defenses. Such "trial by ambush" is at odds with this Court's jurisprudence on the need for an indictment to give enough notice for a defendant to prepare a defense. E.g., Newburn v. State, 205 So.2d 260 (Miss. 1967) (the crime that an alleged burglar intended to commit "must be named in the indictment"); see also Russell v. United States, 369 U.S. 749, 766, 82 S.Ct. 1038, 1048, 8 L.Ed.2d 240 (1962) ("A cryptic form of indictment in cases of this kind [where guilt depends so crucially upon a specific identification of fact] requires the defendant to go to trial with the chief issue undefined... . To allow the prosecutor, or the court, to make a subsequent guess as to what was in the minds of the grand jury at the time they returned the indictment would deprive the defendant of a basic protection which the guaranty of the intervention of a grand jury was designed to secure. For a defendant could then be convicted on the basis of fact not found by, and perhaps not even presented to, the grand jury which indicted him.").
¶ 26. Furthermore, if we were to allow the State to allege burglary as an element of capital murder without alleging the constitutive elements of the burglary, defendants would be subject to defend against evolving prosecutorial theories over the course of the postindictment proceedings. As the trial court in this case noted, Berryhill could be accused of having committed hundreds of crimes in the course of his burglary if the State were allowed to decide as the prosecution proceeded what it wished to prove. Furthermore, the State's argument would pose a rather perverse inconsistency in this Court's jurisprudence. If one is indicted for burglary, and is thereby subject to fifteen years imprisonment, he is entitled to know the alleged underlying crime in order to be able to adequately defend himself. If one is indicted for capital murder in the commission of a burglary, however, and is thereby subject to lethal injection, he is not entitled to know the alleged underlying crime that he be adequately able to save his life. Suffice it to say that, in our opinion, it is undoubtedly more critical that a defendant be adequately able to defend himself against capital crimes than against simple felonies.
*257 ¶ 27. The only support the State has offered for its position that a defendant does not need to know the nature of the burglary portion of his capital murder charge is a set of cases in Texas which hold that a capital murder indictment that arises on a burglary are not required to plead the constituent elements of the burglary. See, e.g., Ramirez v. State, 815 S.W.2d 636, 642 (Tex. Crim. App. 1991). Our reading of the Texas law suggests that in that state, a capital murder indictment that tracks the language of the capital murder statute need not allege the constituent elements of the underlying felony, even if that felony's elements contain underlying crimes, such as with burglary. The capital murder/burglary cases in Texas which enunciate this rule cite previous cases involving robbery, arson and sexual assault, offenses in which there are no underlying crimes constituting the offense that has aggravated the murder. See, e.g., Hathorn v. State, 848 S.W.2d 101, 108 (Tex. Crim. App. 1992) (citing Hogue v. State, 711 S.W.2d 9, 14 (Tex. Crim. App. 1986) (capital murder/arson indictment need not further plead acts constituting arson) and Marquez v. State, 725 S.W.2d 217, 236 (Tex. Crim. App. 1987) (capital murder/sexual assault indictment need not plead the manner and means by which the aggravated sexual assault was allegedly committed)).
¶ 28. In Texas, it appears that the narrow indictment requirements also allow prosecutors to charge attempted crimes without further enunciating the acts constituting the underlying crime. See, e.g., Epps v. State, 811 S.W.2d 237, 242 (Tex. App.Dallas 1991) (attempted burglary indictment need not state the constituent elements of the burglary, where indictment tracks language of attempt statute). See also Young v. State, 675 S.W.2d 770, 771 (Tex. Crim. App. 1984) (same).
¶ 29. All of the other courts that have addressed the burglary/capital murder issue in case law have opined in accord with our analysis in Moore, that such indictments must name the crime constituting the burglary. Hutcherson v. State, 677 So.2d 1174, 1181 (Ala. Crim. App. 1994) (holding that burglary portion of a capital murder indictment made capital by burglary and sexual assault required to include essential elements of the offenses charged, including the felony intended to be committed during the charged burglary); State v. Frazier, 73 Ohio St.3d 323, 331, 652 N.E.2d 1000, 1009 (1995) (indictment for capital murder aggravated by burglary did not give rise to plain error although it did not specify the felony intended in the burglary, where the other counts in the indictment apprised defendant of what he was in jeopardy for and needed to defend against, and where state did not put on any evidence of any other felony than those charged in the several counts of the indictment). Thus, we decline to adopt the rationale of the Texas law, and prefer to join our other sister states on this issue.
¶ 30. The second reason that we hold that murder indictments made capital must specify the nature of the underlying burglary is predicated upon the well-settled law that a defendant cannot be put in jeopardy for crimes except those which a grand jury of his peers has presented. As the trial court noted below in its bench opinion, only a grand jury can advise a defendant of what he is to be charged with. Stirone v. United States, 361 U.S. 212, 218, 80 S.Ct. 270, 273-74, 4 L.Ed.2d 252 (1960) ("The very purpose of the requirement that a man be indicted by grand jury is to limit his jeopardy to offenses charged by a group of his fellow citizens acting independently of either prosecuting attorney or judge."); 41 Am.Jur.2d Indictments and Informations § 1 (1995) ("An indictment can be made only by a grand jury, and no court or prosecutor can make, alter, or amend an indictment returned by a grand jury.").
¶ 31. The need for that limitation is illuminated by the turn of events of this case, where the prosecutor was clearly considering various theories of what might constitute the burglary. While the attempted kidnaping possibility had clearly been presented to the grand jury as evidenced by the separate count which was later severed, there is no evidence that the prosecution ever took the assault theory to the grand jury. Indeed, the letter from the prosecutor advising that it intended to prove the burglary with intent to commit the assault does not even specify *258 against whom the assault was to be perpetrated. Cf. Russell, 369 U.S. at 768, 82 S.Ct. at 1049-50 (discussing with disfavor another case in which the appellant had been met with a different theory at every stage of the criminal proceeding against him: "[f]ar from informing [the appellant] of the nature of the accusation against him, the indictment instead left the prosecution free to roam at large  to shift its theory of criminality so as to take advantage of each passing vicissitude of the trial and appeal.") The rule that absent waiver only a grand jury can charge a person with a crime such as burglary is found explicitly in the Fifth Amendment of the United States Constitution in cases of infamous crimes, and in Article 3, § 27 of the Mississippi Constitution. State v. Sansome, 133 Miss. 428, 97 So. 753 (1923) (holding Article 3, § 27 to require indictments for all felonies).
¶ 32. That rule is the basis of the law governing amendment of indictments. It is hornbook law that a prosecutor has no power to alter the substance of an indictment, either through amendment or variance of the proof at trial without the concurrence of the grand jury. 41 Am.Jur.2d Indictments and Informations § 168-69 (1995). See also, e.g., Quick v. State, 569 So.2d 1197 (Miss. 1990).
¶ 33. The import of our analysis compels us to hold that prosecutors seeking to charge people with capital murder that is constituted by burglary are further required to charge the underlying offense that constitutes the burglary. Besides the Texas cases that construe the general rule allowing indictments that track only the language of the charged crime without any underlying crimes, the State has offered no further justification for adopting its theory. It did not discuss this Court's holding in Moore, and only distinguishes the Lambert analyses as dicta that is not presently binding upon this Court. While the Lambert discussions indeed are dicta, they are dicta of the most persuasive variety. Accordingly, we today adopt that dicta as law.

CONCLUSION
¶ 34. We hold that capital murder indictments that are predicated upon the underlying felony of burglary must assert with specificity the felony that comprises the burglary. We therefore affirm the trial court's quashal of the capital portion of Berryhill's indictment, which was defective in this regard.
¶ 35. AFFIRMED.
DAN LEE, C.J., PRATHER and SULLIVAN, P.JJ., and PITTMAN, JAMES L. ROBERTS, Jr., SMITH and MILLS, JJ., concur.
McRAE, J., concurs in result only.
NOTES
[1] The crime of burglary requires the breaking and entering of a dwelling with the intent to commit another crime. Miss. Code Ann. § 97-17-19.
[2] Count II of the original indictment charged Berryhill with an attempted kidnaping. That count was later severed, and Berryhill presently alleges that the State never did respond to his requests about which kidnaping statute the State intended to travel under for this charge.
[3] Miss. Code Ann. § 99-7-23, also relied on by the State, is irrelevant. That statute speaks to the timeliness of objections to defects which arise outside of the face of the indictment. The defect complained of in this case is the insufficiency of the charge, which of course arises on the face of the document.
[4] The burglary portion of Lambert's indictment read: "... there engaged in the commission of the crime of burglary of the dwelling house then and there occupied by the aforesaid [victim]." 462 So.2d at 322 (Robertson, J. dissenting).