# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 1999-CA-00395-SCT

*GARY DEAN LAMBERT*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 01/30/1999 |
| TRIAL JUDGE: | HON. WILLIAM F. COLEMAN |
| COURT FROM WHICH APPEALED: | COVINGTON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | KRISTY L. BENNETT |
| | JOE M. RAGLAND |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: SCOTT STUART |
| DISTRICT ATTORNEY: | EDDIE BOWEN |
| NATURE OF THE CASE: | CIVIL - POST-CONVICTION RELIEF |
| DISPOSITION: | AFFIRMED - 09/14/2006 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE COBB, P.J., CARLSON AND DICKINSON, JJ.**

**DICKINSON, JUSTICE, FOR THE COURT:**

¶1. The indictment alleged the defendant committed a murder during the commission of a burglary and was therefore guilty of capital murder. However, the indictment failed to disclose that the crime the defendant intended to commit after breaking and entering the dwelling was sexual battery. Although the defendant was convicted of simple murder, he now seeks post-conviction relief due to the faulty capital murder indictment. The question presented is whether the deficient capital murder indictment prejudiced the defendant, such that his conviction or sentence was actually adversely affected, thus requiring post-conviction relief. We find that under the facts and circumstances of this case, it did not.

## BACKGROUND FACTS AND PROCEEDINGS

¶2.     At 6:30 p.m. on January 15, 1982, Gary Dean Lambert went to Nick's Ice House to shoot pool and drink. At midnight, Lambert left Nick's to go to a party, where he smoked marijuana and continued to drink. At 2:30 a.m., he left the party. Realizing he was too intoxicated to continue driving, Lambert pulled into a gas station to call a friend to pick him up. While at the gas station, Lambert saw Bob McClain, whom he had met earlier that night at the party. McClain asked Lambert for a ride, and Lambert agreed to take him home, but he told McClain to drive. Lambert claims he recalls nothing more of the events of that night.

¶3.     About 9:00 a.m. the next morning, Herschel and Edwin Trigg were informed that something was wrong at their mother's house. The two discovered the badly beaten body of their 86-year-old mother, Pearl Lott Trigg, lying in her bed, with Lambert sleeping partially undressed next to her. Lambert's checkbook was discovered under Mrs. Trigg's body, and pubic hairs matching the characteristics of Lambert's hairs were found lodged in Mrs. Trigg's larynx. An autopsy revealed Mrs. Trigg's cause of death to be strangulation.

¶4.     Lambert was indicted for capital murder while engaged in the commission of the crime of burglary. The indictment stated Lambert did

> wilfully, unlawfully, feloniously and of his malice aforethought without the authority of law kill and murder Pearl Lott Triggs [sic], a human being, while he, the aforesaid Gary Dean Lambert, was then and there engaged in the commission of the crime of burglary of the dwelling house then and there occupied by the aforesaid Pearl Lott Triggs [sic], contrary to and in violation of section 97-3-19(2)(e) of the Miss. Code of 1972, Ann. as amended.

Although the indictment charged that burglary was the felony which elevated the crime to capital murder, it did not specify the underlying offense that constituted the "intended crime" element of the burglary.[1]

¶5. On August 6, 1982, Lambert was convicted of simple murder and sentenced to life imprisonment. His conviction was affirmed by this Court on October 31, 1984. *Lambert v. State*, 462 So. 2d 308, 317 (Miss. 1984) (hereinafter *Lambert I*). For several years thereafter, Lambert unsuccessfully pursued habeas corpus relief in the federal courts. The United States District Court's denial of Lambert's request for habeas relief was affirmed by the United States Court of Appeals for the Fifth Circuit. *Lambert v. Miss. Dep't of Corrs.*, 974 F.2d 1334 (5th Cir. 1992). The United States Supreme Court later denied Lambert's petition for certiorari. *Lambert v. Miss. Dep't of Corrs.*, 507 U.S. 1020, 113 S. Ct. 1819, 123 L. Ed. 2d 449 (1993).

¶6. On October 13, 1997, ten days before this Court handed down its decision in *State v. Berryhill*, 703 So. 2d 250 (Miss. 1997),[2] Lambert filed a pro se petition for post-conviction relief, which this Court denied as time-barred pursuant to Miss. Code Ann. Section 99-39-5(2) (Rev. 2000).

¶7. In February 1998, with the assistance of counsel, Lambert filed another petition for post-conviction relief urging us to recognize *Berryhill* as an intervening decision that entitled

---

[1] The crime of burglary requires the breaking and entering of a dwelling with the intent to commit some crime therein. Miss. Code Ann. § 97-17-23 (Rev. 2006).

[2] The *Berryhill* Court held that capital murder indictments predicated on the underlying felony of burglary must specifically name the intended crime that comprised an element of the burglary charge. 703 So. 2d at 255.

him to present his post-conviction relief claim to the trial court. On July 2, 1998, this Court granted Lambert's motion and allowed him to proceed in the trial court with his application for post-conviction relief.

¶8.     On November 18, 1998, Lambert filed his petition for post-conviction relief in the Circuit Court of Covington County, Mississippi. The State opposed the motion on the grounds that the three-year statute of limitations for presenting the motion had expired. The trial court refused to recognize *Berryhill* as an intervening decision, and it denied Lambert's petition as time-barred. Lambert appealed, raising numerous issues including a demand for DNA testing of the pubic hairs found in Mrs. Trigg's larynx.

¶9.     On January 11, 2001, without deciding the question of whether *Berryhill* qualified as an intervening decision, this Court remanded Lambert's case to the trial court for DNA testing of the pubic hairs taken from Mrs. Trigg's throat. *Lambert v. State*, 777 So. 2d 45, 49 (Miss. 2001). We deferred addressing the other issues raised by Lambert, stating, "Lambert may wish to bring these matters before this Court or a lower court at a later time, dependent upon the proof obtained pursuant to our holding today." *Id.*

¶10.    The DNA analysis, completed in December 2002, showed Lambert was the source of the pubic hairs found in Mrs. Trigg's larynx. In January and February 2003, and in January 2004, Lambert filed motions requesting permission to file a supplemental brief in this matter. These requests were denied.

¶11.    In October 2005, Lambert filed another petition for post-conviction relief. On December 15, 2005, this Court entered an order, stating:

4

the Court finds that the issues raised in Lambert's direct appeal should be finally decided by this Court. The Court further finds that the mandate in this matter was issued improperly and it should be recalled. The Court finds that the Orders entered by this Court on April 29, 2003 and January 23, 2004 should be vacated. The Court further finds that the parties in this matter should file supplemental briefs regarding the remaining issues in this appeal.

¶12.    There is but one issue[3] for our consideration: whether the trial court erred in holding that *State v. Berryhill* was not an intervening decision which would have adversely affected the outcome of Lambert's conviction or sentence.

## DISCUSSION

¶13.    Pursuant to Miss. Code Ann. Section 99-39-5(2), a motion for post-conviction relief "shall be made within three (3) years after the time in which the prisoner's direct appeal is ruled upon by the Supreme Court of Mississippi . . . ." This Court decided Lambert's direct appeal in 1984, and Lambert first filed for post-conviction relief in 1997. Therefore, unless an exception to the time-limit applies, Lambert's motion for post-conviction relief must be denied as time-barred. The three-year statute of limitations does not bar post-conviction relief where the prisoner can demonstrate "there has been an intervening decision of the Supreme Court of either the State of Mississippi or the United States which would have actually adversely affected the outcome of his conviction or sentence . . . ." Miss. Code Ann. § 99-39-5(2).

¶14.    Finding that Lambert failed to meet his burden of proving by a preponderance of the evidence that this exception to the time-bar applied, the trial court denied his petition. "When

---

[3] Lambert does not raise two of the issues from his original appeal of the trial court's denial of his motion for post-conviction relief. As such, his claims for relief based on Ricky Cook's statement and ineffective assistance of counsel are procedurally barred. Nevertheless, we would affirm the trial court's denial of relief on both these issues.

5

reviewing a lower court's decision to deny a petition for post conviction relief this Court will not disturb the trial court's factual findings unless they are found to be clearly erroneous. However, where questions of law are raised the applicable standard of review is de novo." ***Brown v. State***, 731 So. 2d 595, 598 (Miss. 1999) (citing ***Bank of Miss. v. S. Mem'l Park, Inc.***, 677 So. 2d 186, 191 (Miss. 1996)).

> **Whether the trial court erred in holding that *State v. Berryhill* was not an intervening decision which would have adversely affected the outcome of Lambert's conviction or sentence.**

> ***State v. Berryhill***

¶15.    In ***Berryhill***, this Court considered whether a capital murder indictment predicated upon the underlying crime of burglary must specifically disclose the crime the defendant intended to commit after breaking and entering the dwelling. 703 So. 2d at 251. We held "that such capital murder indictments must contain an allegation of the specific criminal intent that constitutes an element of the burglary." ***Id.*** at 251-52.

¶16.    In ***Berryhill***, the defendant was indicted for capital murder while engaged in the commission of a burglary. ***Id.*** at 252. Prior to trial, Berryhill moved to quash the indictment because it did not specify the underlying offense comprising an element of the charged burglary. ***Id.*** At the direction of the court, the State advised Berryhill that the felony underlying the burglary count was intent to commit assault. ***Id.*** Four months later, the State informed Berryhill that it might attempt to prove burglary based on kidnaping or attempt to commit kidnaping, in addition to the intent to commit an assault. ***Id.***

6

¶17. The trial court ultimately quashed the capital portion of the indictment because it failed to disclose the crime Berryhill intended to commit after breaking and entering the dwelling. *Id.* However, the State was permitted to proceed on simple murder. *Id.*

¶18. Thereafter, Berryhill pled guilty to simple murder and was sentenced to life without parole. *Id.* The State appealed the trial court's ruling on the capital murder indictment, seeking a ruling from this Court on the requirements for capital murder indictments where the underlying felony is burglary. *Id.* at 252-53.

¶19. The *Berryhill* Court began its analysis by discussing this Court's *Lambert I* opinion,[4] wherein the four justices comprising the plurality declined to articulate a rule on whether capital murder indictments should disclose the intended crime of the burglary. *Berryhill*, 703 So. 2d at 254 (citing *Lambert I*, 462 So. 2d at 311). Since Lambert was only convicted of simple murder, there was no need for the Court to determine the sufficiency of his capital murder indictment, and the Court refused to comment on whether the indictment would have been fatally defective had Lambert been convicted of capital murder. *Berryhill*, 703 So. 2d at 254-55 (citing *Lambert I*, 462 So. 2d at 311).

¶20. The *Berryhill* Court then considered Justice Dan M. Lee's dissent in *Lambert I*, which pointed out that neither the defense nor the court knew the State was going to rely on the crime of sexual battery as the basis of the burglary charge. *Berryhill*, 703 So. 2d at 255 (citing *Lambert I*, 462 So. 2d at 319 (Dan M. Lee, J., dissenting)). The dissent concluded that "since the indictment provides the basis of the notice to the defendant of the crime for which he is

---

[4] Lambert's conviction and sentence were affirmed by this Court in a 4-4 decision. *Lambert I*, 462 So. 2d at 317.

7

to be tried, the failure to be informed of the nature of the crime underlying the burglary was tantamount to the failure to allow a defendant to prepare a defense." *Id.*[5]

¶21.    Following the reasoning advanced by the ***Lambert I*** dissent, the ***Berryhill*** Court held that "capital murder indictments that are predicated on burglary are required to state the underlying offense to the burglary." ***Berryhill***, 703 So. 2d at 255. The Court was concerned with giving notice to a defendant of the charges against him and providing him with an opportunity to prepare an effective defense. *Id.* at 255-56. According to the Court, a defendant like Berryhill, who is indicted without notice of the crime the State alleges he intended to commit during the burglary, could be forced to guess the theories the State might present at trial and prepare defenses against all of them. *Id.* at 256. The Court noted, "[s]uch 'trial by ambush' is at odds with this Court's jurisprudence on the need for an indictment to give enough notice for a defendant to prepare a defense." *Id.* Accordingly, the Court affirmed the trial court's decision to quash the capital portion of Berryhill's indictment. *Id.* at 258.

*The trial court's findings*

¶22.    Here, the trial court concluded ***Berryhill*** was not an intervening decision that would have adversely affected Lambert's conviction or sentence. Thus, it concluded that the Section 99-39-5(2) time-bar applied.

¶23.    The trial court rejected Lambert's interpretation of ***Berryhill.*** It acknowledged that ***Berryhill*** stood for the proposition "that a capital murder indictment in which the underlying

---

[5] While Justice James L. Robertson agreed with this portion of Justice Dan M. Lee's dissent, he also agreed with the plurality inasmuch as Lambert was only convicted of a simple murder charge, and that crime was sufficiently alleged in the indictment. ***Berryhill***, 703 So. 2d at 255 (citing ***Lambert I***, 462 So. 2d at 322-23 (Robertson, J., concurring in part and dissenting in part)).

8

felony is burglary must also state the underlying crime for which the breaking and entering occurred." However, the trial court noted the ***Berryhill*** Court did not reverse a conviction for simple murder because of deficiencies in the indictment. That issue was not before the ***Berryhill*** Court, because the defendant pled guilty to murder. The Court's holding that capital murder indictments predicated on burglary must specify the underlying offense could not have actually adversely affected Lambert's case because Lambert was never convicted of capital murder. He was found guilty of simple murder, a conviction unrelated to the burglary charge, regardless of the underlying intended crime.

> ***Berryhill***'s *effect on Lambert's case*

¶24. In ***Berryhill***, the capital murder portion of the defendant's indictment was held deficient because it did not specify the crime the defendant intended to commit after breaking and entering the dwelling. However, Lambert must do more than point to a holding in order to prevail on his petition for post-conviction relief. Under Section 99-39-5(2), the Court must also consider whether the decision in ***Berryhill*** would have "actually adversely affected the outcome of [Lambert's] conviction or sentence."

> 1.      The capital murder portion of Lambert's indictment

¶25. Lambert acknowledges the ***Berryhill*** Court did not specifically hold that a capital murder indictment which fails to specify the intended crime of the burglary charge is void where the defendant is only convicted of murder. However, Lambert argues that because the defendant in ***Berryhill*** pled guilty to murder, the Court had no reason to address the issue.

9

¶26. According to the State, *Berryhill* stands for the proposition that a capital murder indictment which is insufficient to charge capital murder can still support a conviction of murder less than capital. In *Berryhill*, the defendant was convicted of simple murder after entering a guilty plea, an appeal was taken, and the appeal left Berryhill's murder conviction intact. Thus, the State claims *Berryhill* could not have actually adversely affected Lambert's conviction for simple murder or his sentence.

¶27. Additionally, the specific wording of Lambert's indictment survives any application of *Berryhill*. The first portion of Lambert's indictment, standing alone, sufficiently charges him with simple murder. Miss. Code Ann. Section 99-7-37 states that an indictment for simple murder is sufficient if it charges "that the defendant did feloniously, wilfully, and of his malice aforethought, kill and murder the deceased." Lambert's indictment charged that he "wilfully, unlawfully, feloniously and of his malice aforethought kill and murder Pearl Lott Triggs [sic] . . . ."

¶28. The Court in *Berryhill* held that the trial court correctly quashed the defendant's capital murder indictment. Had *Berryhill* been controlling precedent at the time of Lambert's trial, that case would only have required the trial court to quash the capital murder portion of his indictment. Simply stated, we find that *Berryhill* does not require the reversal of a conviction or sentence obtained under the non-capital portion of an indictment. Based on the holding of *Berryhill* alone, we cannot consider it an intervening decision that would have actually adversely affected the outcome of Lambert's conviction or sentence.

10

2. Lack of notice and corresponding prejudice

¶29. Bolstered by language from *Berryhill*, Lambert argues that he was not given sufficient notice of the charges against him and thus could not prepare an effective defense. Lambert claims he did not know the State would rely on sexual battery as the intended crime of the burglary and, as such, he was unable to present an effective defense to the charges against him as a whole.

¶30. Lambert points to this passage in Justice Dan M. Lee's dissent in *Lambert I* as demonstrating Lambert's lack of notice of the sexual battery offense:

> It is clear from the record that neither the defense counsel nor the trial judge knew that the state would be relying on sexual battery as the underlying crime for the allegation of burglary. This is evidence from a reading of a portion of the record which follows the defense counsel's argument regarding a demurrer to the indictment. There the defense counsel argued that the simple breaking and entering into the house of Mrs. Triggs [sic] was not a burglary and that it could not be an underlying felony. At that point the district attorney interjected with the following which makes it clear that neither the defense nor the court knew that the prosecution was going to be relying on sexual battery as an underlying offense:
>
> BY MR. EVANS:
> Judge, I know you don't want to hear arguments now, but I want to point out, for the sake of the record, that Mr. Buckley has overlooked the elements of the crime of sexual battery altogether.
>
> BY MR. BUCKLEY:
> What is the - I don't understand the -
>
> BY THE COURT:
> Well, he's not charged with sexual battery. He's charged with burglary, isn't he?
>
> BY MR. EVANS:
> Yes, sir, burglary with the intent to commit sexual battery. Burglary, which is the breaking and entering with the intent to commit any crime.

11

BY THE COURT:

> The motion will be overruled, but let me have that indictment, please. (BRIEF PAUSE) Will you approach the bench?
>
> (Whereupon, an off-the-record discussion was had by Court and Counsel at the bench with the Defendant present.)
>
> While admittedly the jury failed to find Lambert guilty of capital murder, it is difficult to imagine that the surprise to the defense and the prosecution's attempt to prove sexual battery had no impact on the jury's ultimate conclusion.

*Lambert I*, 462 So. 2d at 319-20 (Dan M. Lee, J., dissenting). In our view, neither this vague exchange nor the information provided to us by the parties in this case leads to the conclusion that Lambert was subjected to the "trial by ambush" tactics criticized in *Berryhill*.

¶31. Lambert also relies on a bold statement from Justice Dan M. Lee's dissent that "[d]uring the course of the trial the state was allowed to introduce evidence of the sexual battery. Because Lambert was not charged with sexual battery, the introduction of that evidence was clearly error." *Id.* at 320 (Dan M. Lee, J., dissenting). However, neither that dissent nor Lambert explains what the improper evidence might be.

¶32. It is certainly plausible that evidence relevant to the sexual battery offense would also be relevant to the attacker's possible motive and the identification of Lambert as Mrs. Trigg's murderer. Lambert's only example of allegedly improper evidence admitted by the trial court was select testimony by serologist Jonette Gothard, who stated that she tested Mrs. Trigg's body for spermatozoa and seminal fluid using a sexual assault kit, and that she tested Mrs. Trigg's "mouth, her vaginal vault and . . . [her] anus." Lambert claims that had he known the State intended to introduce this evidence, he would have moved to exclude all testimony concerning the sexual battery.

12

¶33. We note that Lambert raises no complaint of discovery violations. Absent some discovery violation, we find no credibility to the theory that Lambert would not have known about this evidence or recognized its value to the State. Autopsies, tests, and other evidence relating to a victim's injuries are often discussed during trial, and Lambert never explains why this evidence was so surprising that it served to prejudice his defense.

¶34. Lambert bears the burden of "proof by preponderance of the evidence" that he is entitled to post-conviction relief. *McClendon v. State*, 539 So. 2d 1375, 1377 (Miss. 1989) (citing Miss. Code Ann § 99-39-23(7)). Lambert simply does not carry his burden. He claims, without explanation, that he did not know the State would attempt to show he committed a sexual battery. He argues that he would have moved to exclude certain evidence of the sexual battery, but he never describes which evidence would have been excluded in a prosecution for simple murder. In fact, the pubic hairs found at the scene, evidence criticized by Justice Dan M. Lee's dissent in *Lambert I* before the hairs were proven by DNA analysis to belong to Lambert, was significant in identifying Mrs. Trigg's attacker, and thus relevant to more than just the alleged sexual battery. See Miss. R. Evid. 404(b) (evidence of other crimes, wrongs, or acts may be admissible for "purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident"). As for testimony about the sexual assault kit used on Mrs. Trigg's body and the resulting findings, evidence of sexual assault may be admitted even when unrelated to the ultimate cause of death. *See, e.g., Thorson v. State*, 895 So. 2d 85, 96, 103 (Miss. 2004).

¶35. Lambert argues that because his indictment did not inform him that the underlying "intended crime" was sexual battery, his trial was inherently unfair. However, in order to

13

prevail on his petition for post-conviction relief, Lambert must prove by a preponderance of the evidence that he was prejudiced by evidence that should have been excluded in a simple murder trial. Lambert points to no such evidence.

¶36. Lambert finally argues that "once the concept that Lambert penetrated Mrs. Triggs [sic] mouth and throat with his private parts was implanted in the jurors' minds, any chance that Lambert might have received a fair trial was obliterated." However, the State points out that Lambert was convicted of murder less than capital, negating any inference that he suffered prejudice. Clearly, Lambert defended himself admirably because the jury did not find him guilty of the underlying burglary felony, and thus they did not convict him of capital murder. His simple murder conviction was completely unrelated to the burglary charge, no matter the underlying offense, so he cannot reasonably claim prejudice to his defense.

¶37. Had *Berryhill* been the law when Lambert was tried, the trial court would have quashed the portion of the indictment charging him with capital murder. *Berryhill* does not support a finding that Lambert's indictment, in its entirety, was void or voidable. Given Lambert's failure to point to any tainted evidence or demonstrate with any specificity prejudice suffered, the trial court's finding that Lambert did not carry his burden of proof with respect to the Section 99-39-5(2) time-bar exception was not clearly erroneous. Lambert has not shown by a preponderance of the evidence that his conviction or sentence would have been different had *Berryhill* been controlling precedent when he was tried, so Lambert's petition for post-conviction relief was properly denied by the trial court.

14

## CONCLUSION

¶38. Because Lambert has not established any exception to the three-year statute of limitations for his post-conviction relief petition, the trial court correctly denied that petition as time-barred. For the reasons herein, we affirm the trial court's denial of Lambert's petition for post-conviction relief.

¶39. **AFFIRMED.**

**SMITH, C.J., WALLER AND COBB, P.JJ., EASLEY, CARLSON AND RANDOLPH, JJ., CONCUR. DIAZ, J., CONCURS IN RESULT ONLY. GRAVES, J., NOT PARTICIPATING.**